*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERNESTINE MOORE,

        Plaintiff-Appellant,

v

CHRISTOPHER FORBERS,

        Defendant-Appellee.

UNPUBLISHED
September 29, 2022

No. 361193
Wayne Circuit Court
Family Division
LC No. 10-107844-DM

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

Ernestine Moore unsuccessfully petitioned the circuit court to change her daughter's domicile to Texas where Moore had secured employment. In *Moore v Forbers*, unpublished per curiam opinion of the Court of Appeals, issued January 20, 2022 (Docket No. 357296) (*Moore I*), this Court held that the circuit court erred in analyzing MCL 722.31(4)(a), regarding Moore's attempts to find employment in Michigan. We remanded for further consideration of the factors impacting a motion for change of domicile.

On remand, the circuit court conducted further hearings, took new evidence, and continued to find that changing the child's domicile was not supported. We affirm that judgment.

## I. BACKGROUND

Since their divorce in 2011, Moore has had primary physical custody of her daughter BF while Christopher Forbers was awarded parenting time on alternating weekends, Wednesday evenings, and certain holidays and vacations. Moore is a labor and employment attorney and lost her job in January 2020. Despite submitting numerous job applications over an extensive period, Moore was unable to find employment in Michigan. She then applied for positions in Texas, where she is also licensed to practice law. In June 2020, Moore secured a position at United Services Automobile Association (USAA), based in San Antonio, Texas. Plaintiff has worked remotely since her hire, with the understanding she would eventually be required to work in-person at USAA's main office in San Antonio. *Moore I*, slip op at 1-2.

Moore moved to change BF's domicile to Texas, arguing that the move had the capacity to improve the quality of life for both of them. Moore's employment provided a high salary with a chance of advancement and tuition assistance for BF. Moore had relatives in Texas to assist with childcare and there were opportunities for BF to participate in horseback riding and to attend an exceptional school system with more challenging classes and a diverse student population, Moore contended.

After 10 days of evidentiary hearings, the circuit court denied the domicile change motion.[1] Relevant to the current appeal, the court found that MCL 722.31(4)(a) weighed against the domicile change. Specifically, the court stated "the child's life in the State of Texas as compared to her current life would be remarkably similar[,]" and that Moore failed to show that the San Antonio school system is "remarkably better" than the district where BF currently attends. The court concluded the school systems of the two cities were "at best, of equal quality, with the minor child already having spent the majority of her life in the West Bloomfield school system accumulating friends and a positive reputation." The circuit court was amazed that Moore was unable to find employment in Michigan, expressing disbelief "that not a single company, outside of one clear across the country, would have any interest in" employing her.

---

[1] Changes of domicile are controlled by MCL 722.31(4), which provides:

> Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:
>
> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.
>
> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.
>
> (c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.
>
> (d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.
>
> (e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

In *Moore I*, slip op at 6-8, this Court affirmed the circuit court's conclusion that MCL 722.31(4)(b) and (c) did not weigh in favor of the change in domicile. However, the panel vacated the court's conclusions related to MCL 722.31(4)(a), reasoning that Moore presented uncontroverted evidence to support her claim that she made significant but unsuccessful efforts to find employment in Michigan. *Moore I*, slip op at 5-6. This Court remanded to the circuit court "to determine whether it would have reached a different result had MCL 722.31(4)(a) been correctly decided." *Moore*, slip op at 8.

The circuit court took additional evidence over two days on remand and Moore provided even more evidence about Michigan jobs she had applied for. Once again, the court denied Moore's motion for change of domicile, concluding that the move did not have "the capacity to improve the quality of life for both the child and the relocating parent." The circuit court accepted that Moore had made sufficient effort to find employment in Michigan. However, the court determined that Moore's employment by USAA "does not provide a valid enough foundation to prove the move has the capacity to improve the quality of life for the minor child." The court noted that BF "is currently in an excellent situation and thriving." The court reasoned:

> [O]ne of the reasons [Moore] decided to reside in the West Bloomfield district is because of the excellent quality of the public school system. While [Moore] brought two principals from the San Antonio school system as witnesses, they failed to demonstrate to the Court that the quality of education in Texas, specifically Barbara Bush Middle School which the child would be attending, is remarkably better than the West Bloomfield district. The child is currently, and for the majority of her life has been, enrolled in the West Bloomfield School system and is doing fantastic. [Moore] presents evidence that Barbara Bush Middle School has a few honors classes and extracurricular activities which the child has interest in, but fails to make the argument that the child is academically starved and languishing in the West Bloomfield System. Barbara Bush Middle School may have a few more amenities, but the Court possesses no reservations that the quality of education that the minor child receives is excellent. Further, she is currently enrolled in a vast variety of extracurricular activities which both parents actively participate in, and seems to be very well adjusted without even considering the vast amount of litigation that has come before this Court regarding this case. If the child were to move entirely across the country, the Court firmly believes the balance the child currently possesses would be disrupted. Thus, when considering this factor and the idea the school systems are near equal quality, with the minor child already having spent the majority of her life in the West Bloomfield school system accumulating friends and a positive reputation, the Court finds the change in school does not have the capacity to improve the life of the minor. The Court is also of the belief because both parents are so involved in their child's extra-curricular activities denying one of them the opportunity to be with their daughter during these activities absent a cross-country flight does not improve the quality of life for the child. The consistent logistics of flying the child for every break and long periods in the summer puts an undue burden on the child which does not presently exist. The Court is also of the opinion that the sheer amount of cross-country flights would cumulate in an undue mental and physical burden on the child.

Moore again appeals.

## II. ANALYSIS

As noted in *Moore I*, slip op at 2, citing *Moote v Moote*, 329 Mich App 474, 477-478; 942 NW2d 660 (2019), we review for an abuse of discretion a court's resolution of a motion for change of domicile. We must affirm the judgment unless the circuit court's factual findings are against the great weight of the evidence or the court made a clear legal error. *Moore I*, slip op at 2, citing *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010).

This time around the circuit court's factual findings regarding MCL 722.31(4)(a) are supported by the great weight of the evidence. The court acknowledged that Moore had applied for numerous positions in Michigan and had not been selected. The court conceded that Moore's and BF's financial situation would be better in Texas. The court considered the evidence presented by Moore regarding the benefits of the San Antonio middle school that BF would attend and evidence regarding BF's current school district. The court found that the two districts were essentially equal in quality; BF was in advanced classes in West Bloomfield just as she would be in San Antonio. And the court found that transferring BF to a school district on the other side of the country would not appreciably improve her quality of life. BF has a network of friends in her current district. She participates in extracurricular activities. Living in Michigan, both of BF's parents are able to be actively involved in her life, school, and extracurriculars.

Moore challenges the circuit court's conclusion that it would be overly taxing for BF to fly back and forth for parenting time, noting that BF already flies for vacations and is accustomed to it. Moore further notes that she suggested a modified parenting-time schedule to protect BF's relationship with her father. However, it is uncontroverted that BF now has the ability to see her father at any time given his close proximity. This proximity has allowed Forbers to attend BF's extracurricular activities and assist with school projects. Moving across the country would require less frequent parenting time, although possibly for longer periods. And instead of a quick drive, BF or Forbers would be required to fly to exercise parenting time.

Contrary to Moore's insistence, the circuit court did not rely on an improper standard of review. As noted by Moore, MCL 733.31(4)(a) requires the court to consider "[w]hether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent." The circuit court at one point stated that the San Antonio school district was not "remarkably better" than West Bloomfield, and ultimately found that "the change in school does not have the capacity to improve the life of the minor." The court did not employ a stricter standard than required by the statute and Moore's challenge lacks any basis.

Moore also continues to challenge the circuit court's assessment of MCL 722.31(4)(b) and (c). This Court found no error in relation to those factors in *Moore I*. Rather, this Court remanded for further consideration of factor (a) alone and directed the circuit court to determine if it would have reached the same overall result had it properly considered factor (a). Accordingly, we need not address Moore's renewed objections to factors (b) and (c).

Generally, a change of domicile motion triggers a four-part legal analysis. The first step is to consider the factors of MCL 722.31(4), as was done in this case. *If* the court finds a change

of domicile is supported by the statutory factors, the court must define the child's established custodial environment and then consider whether the change in domicile would alter the established custodial environment. Only then does a court consider whether the change of domicile would be in the child's best interests. See *Moote*, 329 Mich App at 480. Moore contends in the current appeal that the circuit court erred in determining that the domicile change would not be in BF's best interests. As the circuit court determined that a change of domicile was not supported under the statute, its duty was complete. And as we now affirm that ruling, we need not reconsider any superfluous best-interest analysis.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel